2025V00284/CA/JW
JOHN GIORDANO
UNITED STATES ATTORNEY
BY: CHRISTOPHER AMORE
ASSISTANT UNITED STATES ATTORNEY
970 BROAD STREET, SUITE 700
NEWARK, NEW JERSEY 07102
TEL: (973) 645-2700
Christopher.Amore@usdoj.gov

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Hon. |
| v. | : | Civil Action No. 25-1928 |
| **APPROXIMATELY $17,157,537.99 FORMERLY ON DEPOSIT IN CITIBANK ACCOUNT NUMBER XXXXXX5352 HELD IN THE NAME OF TRANSPO EXPRESS LLC; AND** | : : : : | **VERIFIED COMPLAINT FOR FORFEITURE _IN REM_** |
| **APPROXIMATELY $1,992,297.78 FORMERLY ON DEPOSIT IN PROSPERITY BANK ACCOUNT NUMBER XXXXX8840 HELD IN THE NAME OF LAW OFFICE OF NEAL H. PASTER IOLTA,** | : : : : | |
| Defendants _in rem_. | : | |

Plaintiff the United States of America, by its attorney, John Giordano, United States Attorney for the District of New Jersey, for its verified complaint (the "Complaint") alleges, upon information and belief, as follows:

## I. **NATURE OF THE ACTION**

1. This action is brought by the United States of America seeking the forfeiture *in rem* of:

   a. approximately $17,157,537.99 formerly on deposit in Citibank account number xxxxxx5352 held in the name of Transpo Express LLC; and

   b. approximately $1,992,297.78 formerly on deposit in Prosperity Bank account number xxxxx8840 held in the name of Law Office of Neal H. Paster IOLTA

(hereinafter referred to collectively as the "Defendant Funds").

2. The Defendant Funds are subject to forfeiture to the United States of America pursuant to 18 U.S.C. § 981(a)(1)(C), which subjects to civil forfeiture any property, real or personal, that constitutes or is derived from proceeds traceable to wire fraud, and conspiracy to commit wire fraud.

3. Wire fraud, in violation of 18 U.S.C. § 1343, is an offense constituting "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7).

4. The Defendant Funds are additionally subject to seizure and forfeiture to the United States of America pursuant to 18 U.S.C. § 981(a)(1)(A), which subjects to civil forfeiture any property, real or personal, that was involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957, and any property traceable to such property.

5. Pursuant to 18 U.S.C. § 984, in any forfeiture action *in rem* in which the subject property is funds deposited in an account at a financial institution, "it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; . . . [ ] it shall not be a defense that

the property involved in such an offense has been removed and replaced by identical property[;] . . . [and] any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section."

## II.  JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355(a).

7. Venue is proper pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the District of New Jersey.

## III.  THE DEFENDANT FUNDS

8. The Defendant Funds were seized pursuant to seizure warrants issued on January 17, 2025, by the Honorable Cathy L. Waldor, United States Magistrate Judge for the District of New Jersey, and on January 31, 2025, by the Honorable José R. Almonte, United States Magistrate Judge for the District of New Jersey.

9. The Defendant Funds were seized from accounts held by financial institutions, as defined in 18 U.S.C. § 20.

10. The Defendant Funds are currently being held in the CBP–Secret Service forfeiture suspense account held by the United States Treasury.

## IV.  FACTS

**A.  Business Email Compromise Schemes**

11. A business email compromise ("BEC") scheme is a scam that targets businesses, often those that work with foreign or domestic suppliers and/or

businesses that regularly perform wire transfer payments. A BEC scheme is often carried out by compromising legitimate business email accounts through social engineering or computer intrusion techniques to induce an unauthorized transfer of funds. The goal of most BECs, as with the one described herein, is to steal money through fraud and deceit.

**B.      The Fraudulent Diversion of the Victim Company's Payments**

12.     The victim company ("Victim Company-1") is an LLC that was engaged in a real estate transaction for the purchase of real property in Orange County, California.

13.     In order to complete the purchase, Victim Company-1 was to pay approximately $45.3 million to an escrow company (the "Escrow Company") as a closing payment for the property sale. Throughout this process, Victim Company-1 communicated with an employee of the Escrow Company ("Employee-1") via email.

14.     Beginning on or about December 10, 2024, unbeknownst to Victim Company-1, Victim Company-1 began receiving "spoofed" emails purporting to be from Employee-1 at the Escrow Company. A "spoofed" email is a fraudulent email that has been altered to make it appear as if it comes from a different source. The spoofed emails used Employee-1's name but were not from Employee-1. Rather the emails originated from an email domain with one additional letter added to the Escrow Company's name in order to deceive Victim Company-1. Victim Company-1, believing the spoofed emails were genuine emails from Employee-1, continued correspondence with the spoofed email account.

15. On or about January 9, 2025, Victim Company-1 received a spoofed email containing wiring instructions for the $45.3 million property closing payment. The instructions directed that Victim-Company-1 make any payments to a Citibank account ending in 5352 ("x5352"). Unbeknownst to Victim Company-1, x5352 was not held by or associated with the Escrow Company.

16. On or about January 10, 2025, to test out the wire transfer instructions listed in the spoofed email, the owner of Victim Company-1 (the "Owner") sent $1,000.00 from his personal account and $1,000.00 from a Victim Company-1 account to x5352. The Owner received a confirmation of the transactions from the spoofed email account. The Owner then arranged for final payment, which was to be accomplished by sending two additional payments using the previously supplied account information.

17. On or about January 13, 2025, the Owner sent a total of $44,885,220.50 to x5352. Specifically, the Owner sent one payment of $18,885,220.50 from a personal bank account and a second payment of $26,000,000.00 from a bank account held by Victim Company-1.

18. Subsequent to these transactions, the Owner received a spoofed email stating that Victim Company-1 had not paid the entirety of the approximately $45.3 million owed. On or about January 15, 2025, the Owner sent an additional $119,369.67 from a personal bank account to x5352 to complete the transaction.

19. On or about January 15, 2025, after the Owner transmitted the additional $119,369.67 to x5352, the Owner received a message from Employee-1

stating that the Escrow Company had not received the escrow funds for the property purchase. The Owner immediately called Employee-1 and confirmed with Employee-1 that the Escrow Company had not received the escrow funds the Owner had wired on January 13, 2025 and January 15, 2025. The Owner then checked his emails and realized that he was not talking to Employee-1, but rather to someone using a spoofed email address that appeared to belong to Employee-1.

20.     x5352 was opened on November 18, 2024 at a Citibank branch in Hoboken, New Jersey. According to bank records, x5352 is a business account in the name of Transpo Express LLC with an address of 106 Martens Avenue, Newark, New Jersey 07106. Transpo Express LLC was incorporated with the New Jersey Department of State in November 2024. The purported account signor for x5352 is Kiara Coleman whose address, according to account documents, is an address in Newark, New Jersey.

21.     On or about December 27, 2024, an initial deposit of $100 was made into x5352. Prior to the wire transfers from Victim Company-1, the only activity in x5352 was the initial $100 deposit and some smaller Zelle transfers to and from x5352.

22.     After receipt of the stolen funds from Victim Company-1, the funds in x5352 were rapidly depleted through ACH transfers in excess of $10,000.

23.     On or about January 17, 2025, after being notified of this fraudulent activity, Citibank was able to recall some of the $45.3 million stolen from Victim

Company-1. Pursuant to the January 17, 2025 seizure warrant, the United States Secret Service ("USSS") seized approximately $17,157,537.99 from x5352.

24. On or about January 15, 2025, as part of the depletion of the stolen funds from x5352, an ACH transaction sent $2,000,000.00 from x5352 to an account at Prosperity Bank ending in 8840 and held in the name of Law Office of Neal H. Paster IOLTA ("x8840"). According to Prosperity Bank, prior to the $2,000,000.00 transaction from x5352, x8840 contained only $7.42. In fact, x8840 had no transactions in December 2024 or January 2025 prior to the January 15, 2025 ACH transfer.

25. Prosperity Bank contacted the account holder for x8840 who informed the bank that he was an attorney and that the funds pertained to a debt collection for a client. The account holder stated that he conducted two transactions of $5,000.00 each with this money including a $5,000.00 transfer to his personal account for his handling of this transaction. The other $5,000.00 was for a fee. There was no indication that the remaining balance of x8840 was part of any attorney fees.

26. Pursuant to the January 31, 2025 seizure warrant, the USSS seized approximately $1,992,297.78 from x8840.

## V. FIRST CLAIM FOR FORFEITURE

27. The allegations contained in paragraphs 1 through 26 of this Complaint are incorporated herein and made part hereof.

28.     Based on the foregoing, the Defendant Funds are property that constitutes or is derived from proceeds traceable to wire fraud, in violation of 18 U.S.C. § 1343, and/or conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, and are therefore subject to civil forfeiture to the United States of America pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 984.

## V.   SECOND CLAIM FOR FORFEITURE

29.     The allegations contained in paragraphs 1 through 26 of this Complaint are incorporated herein and made part hereof.

30.     Based on the foregoing, the Defendant Funds are property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957, and are therefore subject to civil forfeiture to the United States of America, pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 984.

## REQUEST FOR RELIEF

WHEREFORE, the United States of America requests that the Clerk of the Court issue a warrant for the arrest and seizure of the Defendant Funds pursuant to Rule G(3)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure, which the plaintiff will execute upon the Defendant Funds pursuant to 28 U.S.C. § 1355(d); that notice of this action be given to all persons who reasonably appear to be potential claimants to the Defendant Funds; that the Defendant Funds be forfeited and condemned to the United States of America; that the plaintiff be awarded its costs

and disbursements in this action; and that the Court grant such other relief it deems just and proper.

Dated: Newark, New Jersey
       March 18, 2025

                                  JOHN GIORDANO
                                  United States Attorney

                                  *s/Christopher Amore*
                                  By: CHRISTOPHER AMORE
                                  Assistant United States Attorney

## **VERIFICATION**

I, Daniel Alessandrino, hereby verify and declare under penalty of perjury that I am a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in enforcing the criminal laws; that I have been deputized as a Special Federal Officer by the United States Secret Service, and in that capacity have responsibility for this action; that I have read the foregoing Verified Complaint for Forfeiture *in Rem* and know the contents thereof; and that the matters contained in the Verified Complaint are true to the best of my knowledge, information, and belief.

The sources of my knowledge and the grounds of my belief include the official files and records of the United States; information obtained directly by me; and information supplied to me from and by other law enforcement officials, during an investigation of alleged violations of Title 18, United States Code.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746.

Dated this 17th day of March, 2025.

                                                Daniel Alessandrino, Task Force Officer
                                                United States Secret Service